IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELLE ARYELLAH JOHNSON,

    Plaintiff,

v.

3:14-CV-368-PK

FINDINGS AND
RECOMMENDATION

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, OREGON HEALTH
AUTHORITY, and FAMILY CARE, INC.,

    Defendants.

PAPAK, Magistrate Judge:

Plaintiff *pro se* Michelle Aryellah Johnson filed this action *in forma pauperis* against defendants the United States Department of Health and Human Services ("DHHS"), the Oregon Health Authority ("OHA"), and Family Care, Inc. ("FCI"). By and through her complaint, Johnson seeks injunctive relief to enjoin defendants from making coverage determinations under

Page 1 - FINDINGS AND RECOMMENDATION

the Oregon Health Plan (Oregon's state medicaid program, a program administered and overseen by the OHA) pursuant to "blanket policies" as opposed to case-by-case determinations, injunctive relief to enjoin defendants from willfully maintaining inaccurate records regarding Johnson's history of health care, injunctive relief to enjoin defendants from denying coverage to Johnson under the Oregon Health Plan (the "OHP"), and this court's declaratory judgment that OHA's regulations prohibiting payment under the OHP for transsexual surgery and related services are discriminatory under the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act (the "RA"). Johnson asserts three claims against the defendants, one premised on the theory that OHA's regulations prohibiting payment under the OHP for transsexual surgery and related services are discriminatory under the ADA and RA, one premised on Johnson's allegation that the OHA wrongfully denied her coverage for surgical treatment of her diagnosed condition of gender identity disorder ("GID") pursuant to those same regulations, and one premised on Johnson's allegations that one or more of the defendants have maintained misleading records of her diagnosed condition of Retinopathy of Prematurity ("ROP") and/or that OHA wrongfully denied her coverage for treatment of her ROP condition. Johnson takes the position that this court may properly exercise federal-question subject-matter jurisdiction over her claims pursuant to 28 U.S.C. § 1331.

Now before the court is defendant OHA's motion (#15) to dismiss Johnson's claims against it pursuant to Federal Civil Procedure Rule 12(b)(1) for lack of subject-matter jurisdiction or, in the alternative, pursuant to Federal Civil Procedure Rule 12(b)(6) for failure to state a claim upon which relief can be granted. I have considered the motions and all of the papers and pleadings on file. For the reasons set forth below, OHA's motion should be granted,

Page 2 - FINDINGS AND RECOMMENDATION

Johnson's claims should be dismissed for lack of subject-matter jurisdiction on the grounds discussed below to the extent alleged against OHA, and this court should dismiss Johnson's claims *sua sponte* on ripeness grounds to the extent her claims are alleged against defendants DHHS and FCI.

## LEGAL STANDARD

The federal courts are courts of limited jurisdiction. *See, e.g., Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005), *citing Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). As such, the courts presume that causes of action "lie[] outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377; *see also, e.g., Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006).

A motion under Federal Civil Procedure Rule 12(b)(1) to dismiss for lack of subject-matter jurisdiction may be either "facial" or "factual." *See Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004), *citing White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack on subject-matter jurisdiction, the moving party asserts that a plaintiff's allegations are insufficient on their face to invoke federal jurisdiction, whereas in a factual attack, the moving party disputes the factual allegations that, if true, would give rise to subject-matter jurisdiction. Where a defendant raises a facial challenge to subject-matter jurisdiction, the factual allegations of the complaint are presumed to be true, and the motion may be granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). By contrast, where a defendant raises a factual challenge to federal jurisdiction, "the district court may review evidence beyond the

Page 3 - FINDINGS AND RECOMMENDATION

complaint without converting the motion to dismiss into a motion for summary judgment," *Safe Air v. Meyer*, 373 F.3d at 1039, *citing Savage*, 343 F.3d at 1040 n.2, and "need not presume the truthfulness of the plaintiff's allegations," *id.*, *citing White*, 227 F.3d at 1242.

"Defective allegations of jurisdiction may be amended, upon terms, in trial or appellate courts." 28 U.S.C. § 1653. It is improper to dismiss an action based on a defective allegation of jurisdiction without leave to amend "unless it is clear, upon de novo review, that the complaint could not be saved by amendment." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 n.6 (9th Cir. 2002), *citing Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001).

## FACTUAL BACKGROUND

### I.   Johnson's Allegations in Support of Her Claims

In support of her first-enumerated claim, Johnson alleges as follows:

> The US Dept. of Health and Human Services, the Oregon Health Authority and Family Care Incorporated have established and continue to use "Blanket Policies" that exclude[] the Plaintiff and . . . those similarly situated [to] her from receiving medically necessary surgery without consideration of their diagnosed disabilities on a case[] by case basis as required under the Medicaid Act [*sic*]. The Oregon Health Plan[,] which utilizes a "prioritized list" of covered and excluded services[,] mandates excluding "Transsexual Surgery or any related services or items" pursuant to OAR 410-120-1200(2)(z) . . . while the same "prioritized list" covers [such] surgery for "congenital absence of vagina" even though Transsexuals . . . have physical impairments of the brain as a result of neuro-endocrin[e] (congenital) features of the BSTc Stria Terminalis in the hypothalamus region of the . . . brain and a DNA repeat sequence of the androgen receptor which qualifies . . . them for disability discrimination coverage under the [ADA] and the [RA].

Complaint at 3. In support of her second-enumerated claim, Johnson alleges that:

> Plaintiff was diagnosed with [GID] in 1998 at the [United States Medical Center for Federal Prisoners in] Springfield, Missouri [("USMCFP Springfield"),] while [she was] under a 18 USC 4244(d) commitment for "care and treatment" after a hearing was held in the US District Court, ND GA, ATL Division in USA v.

Page 4 - FINDINGS AND RECOMMENDATION

> Hummasti, 97-127-JOF[,] to determine if Plaintiff was in need of care and treatment in a medical facility. In spite of that diagnosis[] [and] separate diagnos[es] of [ROP and other conditions], the US DOJ and US BOP refused to provide the Plaintiff with care and treatment which resulted in . . . denial of Medicaid coverage [of the plaintiff's conditions] from may 2000 until November 2012 due to the US DOJ - BOP policy of denial of care and treatment for gender dysphoria. Plaintiff was denied any treatment plan by the "treatment team" at USMCFP Springfield which would have appr[]ised the Plaintiff of the serious nature of her gender dysphoria diagnosis and it[]s congenital etiology . . . . Plaintiff is still denied any treatment plan through OHP from a primary care provider because of the Defendants['] blanket policies of excluding "transsexual surgery or any related services or items" for her diagnosed disabilities including [GID].

Complaint at 4. In support of her third-enumerated claim, Johnson alleges that:

> Plaintiff was diagnosed with [ROP] at Casey Eye Institute in approximately 1977. In May 2000[,] the Plaintiff was provided with . . . prescription glasses through the [OHP] and Pacific University Eye Clinic, specifically for [ROP]. At the same time (May 2000)[,] Plaintiff applied for Supplemental Security [Income ("SSI")] and Disability [Insurance Benefits ("DIB")] due to various disabilities [(]some of which are congenital impairments that are "life-long" for which there is no diagnostic[ally] expected "improvement[)], and Plaintiff['s applications for SSI and DIB were] denied . . . allegedly because "Claimant entered a Medical Facility in May 2000" when in fact, Plaintiff was discharged from a Medical Facility in May of 2000!!! Finally, on September 13, 2012[,] [one of] Plaintiff's repeated applications for SSI was approved by Administrative Law Judge Paul G. Roebeck. In spite of Plaintiff's diagnosed [ROP], the Administrative Files maintained on Plaintiff omit Plaintiff's diagnosis of [ROP] and only state[] Plaintiff is "blind in one eye" which. . . fails to alert and appr[]ise" health care providers and insurers of the serious nature of Plaintiff's multiple impairments and conditions leading to repeated denials of [coverage for] care, treatment[,] and rehabilitation services as is the case here, where Plaintiff on 19 February 2014 was denied health insurance coverage for [ROP] [in contravention of] OAR 410-140-0260[(9)(f)(C)] and the [ADA and RA].

Complaint at 4.

## II.   OHA's Evidentiary Submissions

In support of the proposition that Johnson's first- and second-enumerated claims "will . . . soon be moot," OHA offers evidence tending to establish that OHA will eliminate the blanket

Page 5 - FINDINGS AND RECOMMENDATION

exclusion for OHP coverage of transsexual surgery set forth at O.A.R. 410-120-1200(2)(z) effective October 1, 2014, and that the Oregon Health Evidence Review Commission is currently in the process of developing coverage guidelines in connection with such surgery and related services or items. This court may properly take judicial notice that OHA issued public notice of these rulemaking changes in June 2014 without thereby converting OHA's motion from a facial to a factual challenge to this court's subject-matter jurisdiction. *See* Fed. R. Evid. 201.

OHA additionally directs the court's attention to Johnson's filing (#9) of April 7, 2014, styled as "Plaintiff's Supporting Documents and Exhibits" in support of her motion (#3) for a temporary restraining order, Exhibit C-4 to which indicates that on February 14, 2014, Johnson filed an Administrative Hearing Request with Oregon's Office of Administrative Hearings ("OAH") regarding the denial of OHP coverage for her requested transsexual surgical procedures (orchiectomy and vaginoplasty), and that the OAH set a hearing to take place on April 16, 2014. I find that consideration of the documents comprising Exhibit C-4 will require that OHA's challenge to this court's subject-matter jurisdiction be treated as a factual rather than a facial challenge.

## ANALYSIS

In support of its motion, OHA offers two discrete arguments in support of the proposition that this court lacks subject-matter jurisdiction to consider the merits of Johnson's claims, and in the alternative two further arguments in support of the proposition that Johnson fails to state a claim upon which relief may be granted in this court. Because, for the reasons that follow, I agree with OHA that, at this time, this court is without jurisdiction to consider the merits of Johnson's claims, I do not consider herein OHA's non-jurisdictional arguments. I consider each

Page 6 - FINDINGS AND RECOMMENDATION

of OHA's jurisdictional arguments in turn below.

## I. Sovereign Immunity

OHA's first jurisdictional argument is a facial challenge to this court's subject-matter jurisdiction premised on the proposition that "all three of plaintiff's claims allege – at least in part – violations of Oregon statutory and regulatory laws." Arguing that under the Eleventh Amendment principles of sovereign immunity bar suits against states or state agencies premised on the violation of state law, OHA takes the position that "[t]o the extent the complaint alleges claims [against OHA] based on violations of Oregon law, those claims are barred by the Eleventh Amendment and must be dismissed."

I agree with OHA that state sovereign immunity, including the sovereign immunity principles underlying the Eleventh Amendment, bars the federal courts from considering the merits of claims against a state or an "arm" thereof based on violation of state law. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103-106 (1984); *Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133-1134 (9th Cir. 2012). However, I largely disagree with OHA's characterization of each of Johnson's claims against it as premised in part on the violation of Oregon law. The gravamen of Johnson's first claim is that OHA's codified policies violate the ADA and RA, the gravamen of her second claim is that OHA's denial of coverage for her requested transsexual surgical procedures violated those same two federal statutes, and the gravamen of her third claim is that OHA's denial of coverage for her ROP treatment violated O.A.R. 410-140-0260 as well as the ADA and RA. Thus, only the third of the three enumerated claims is premised even in minor part on the violation of a state regulation.

It is well established that the Eleventh Amendment "does not . . . bar actions for

Page 7 - FINDINGS AND RECOMMENDATION

prospective declaratory or injunctive relief against state [entities] for their alleged violations of federal law." *Coalition to Defend Affirmative Action*, 674 F.3d at 1134, *citing Ex parte Young*, 209 U.S. 123, 155-56 (1908), *Alden v. Maine*, 527 U.S. 706, 747 (1999). Moreover, it is equally well established that "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'acts pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001), *quoting Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000). In connection with both Title II of the ADA and Section 504 of the RA, Congress has unequivocally and validly abrogated the states' immunity under the Eleventh Amendment. *See Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1185, 1185-1186 (9th Cir. 2003); *see also Clark v. California Dep't of Corrections*, 123 F.3d 1267, 1269-1271 (9th Cir. 1997); 42 U.S.C. § 12202; 42 U.S.C. § 2000d-7(a)(1). To the extent Johnson's claims for prospective relief herein are premised on OHA's violation of the ADA and RA, state sovereign immunity therefore presents no bar to this court's subject-matter jurisdiction over those claims. Only to the limited extent that Johnson's third-enumerated claim is alleged against OHA and premised on violation of O.A.R. 410-140-0260 is OHA's Eleventh-Amendment argument well taken, and only to that extent should OHA's motion to dismiss be granted on sovereign immunity grounds.

## II. Ripeness

OHA's second jurisdictional argument is that none of Johnson's claims against it is ripe for adjudication. Because this argument is premised on the proposition that Johnson has failed to pursue available administrative remedies prior to initiating this action – a matter not addressed in Johnson's pleading – it constitutes a factual challenge to this court's jurisdiction.

Page 8 - FINDINGS AND RECOMMENDATION

> The Supreme Court instructs that ripeness is "peculiarly a question of timing," *Regional Rail Reorg. Act Cases*, 419 U.S. 102, 140, 42 L. Ed. 2d 320, 95 S. Ct. 335 (1974), designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967). [The] role [of the federal courts] is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution. *See* U.S. Const. art. III. Although ripeness, like other justiciability doctrines, is "not a legal concept with a fixed content or susceptible of scientific verification," *Poe v. Ullman*, 367 U.S. 497, 508, 6 L. Ed. 2d 989, 81 S. Ct. 1752 (1961), the Supreme Court has observed that the doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction," *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18, 125 L. Ed. 2d 38, 113 S. Ct. 2485 (1993). As [the Ninth Circuit] noted in *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993), "the ripeness inquiry contains both a constitutional and a prudential component."

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). As to the constitutional component:

> [T]he Constitution mandates that prior to [the federal courts'] exercise of jurisdiction there exist a constitutional "case or controversy," that the issues presented are "definite and concrete, not hypothetical or abstract." *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93, 89 L. Ed. 2072, 65 S. Ct. 1483 (1945). In assuring that this jurisdictional prerequisite is satisfied, [the federal courts] consider whether the plaintiffs face "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 60 L. Ed. 2d 895, 99 S. Ct. 2301 (1979), or whether the alleged injury is too "imaginary" or "speculative" to support jurisdiction. *Id.*

*Id.* at 1139. As to the prudential component, the "analysis is guided by two overarching considerations: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Id.* at 1141, *quoting Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967), *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1040-1041 (9th Cir. 1999) (*en banc*). "Article III ripeness, which is a matter of constitutional law, is jurisdictional, while

prudential considerations of ripeness are discretionary." *Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 980 (9th Cir. 2011) (internal modifications, quotation marks omitted), *quoting McClung v. City of Sumner*, 548 F.3d 1219, 1224 (9th Cir. 2008). "The burden of establishing ripeness . . . rests on the party asserting the claim." *Colwell v. HHS*, 558 F.3d 1112, 1121 (9th Cir. 2009), *citing Renne v. Geary*, 501 U.S. 312, 316 (1991). Where a defendant raises ripeness concerns through a motion raising a factual challenge to a federal court's subject-matter jurisdiction, it becomes the plaintiff's burden to establish ripeness through the presentation of affidavits or other evidence. *See id., citing St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

Applicable Supreme Court jurisprudence establishes that a challenge to administrative action in connection with which a plaintiff seeks injunctive and/or declaratory judgment remedies does not become ripe for judicial resolution until "the effects of the administrative action challenged have been 'felt in a concrete way by the challenging parties.'" *Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 57 (1993), *quoting Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-149 (1967). That requirement is met without need for a challenger first to pursue available administrative remedies to a final determination where the agency action will have immediate "irremediably adverse consequences" for the challenger, *id.* at 58, *quoting Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967), as where the promulgation of an administrative rule forces an affected party to choose between incurring expense to comply with the rule or risking penalties for its violation. By contrast, where an administrative regulation or action does not immediately disturb the *status quo* between the parties, and the regulation or action is subject to challenge through an available administrative procedure, obtaining a final administrative decision

Page 10 - FINDINGS AND RECOMMENDATION

regarding the propriety of the complained-of administrative conduct through that procedure is an essential prerequisite of ripeness. *See, e.g., Toilet Goods*, 387 U.S. at 165-166.

Here, the challenged administrative conduct imposes no new affirmative obligation on Johnson, but rather maintains the *status quo ante*.[1] Moreover, OHA's coverage determinations and policies regarding the same are subject to the Office of Administrative Hearings' "contested case" procedure, *see* O.A.R. 410-120-1860, the final decisions of which are immediately reviewable by the Oregon Court of Appeals, *see* Or. Rev. Stat. 183.482. Indeed, Johnson's evidentiary proffer, discussed above, indicates that she has initiated a contested case in connection with OHA's denial of her application for OHP coverage of her requested surgical procedures, and Johnson states in argument that she attended a hearing in connection with that case. No party offers evidence or advice regarding whether any final decision has been reached in connection with that case, and the record contains no indication whether Johnson has initiated a contested case in connection with any of the other conduct complained of herein. A dispute over administrative conduct does not become fit for judicial decision until available, non-futile administrative review thereof becomes final. *See US WEST Communs., Inc. v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118-1119 (9th Cir. 1999).

For the foregoing reasons, Johnson's claims against OHA, each of which is premised on administrative conduct subject to available administrative appeal, must reach a final adverse

---

[1] Maintenance of the *status quo* here is undoubtedly onerous from Johnson's perspective. However, that fact, while regrettable, is not grounds for this court to exercise jurisdiction where authority for doing so does not exist. To meet the "hardship" requirement of the two-part ripeness inquiry, "a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss." *US WEST Communs., Inc. v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999).

decision through the administrative contested case process before they become ripe for judicial consideration. Because OHA's motion squarely raises the question of whether a final adverse administrative decision has issued, it is Johnson's burden in opposition to present evidence sufficient to permit the court to determine the ripeness of her claims under the framework discussed above. Johnson has not met that burden.

Instead, Johnson argues that she is not required to obtain a final administrative decision before seeking judicial review based on the "capable of repetition" doctrine which, properly construed, provides an exception to the mootness principle, and is inapplicable to the ripeness inquiry, *see, e.g., Wiggins v. Rushen*, 760 F.2d 1009, 1010-1011 (9th Cir. 1985). It appears likely that Johnson intends instead to invoke the conceptually somewhat related "futility" exception to the final administrative decision requirement. Under that exception, a final administrative decision is not required where the administrative process is highly unlikely to yield meaningful relief. *See, e.g., Guatay*, 670 F.3d at 981-982. Here, the futility exception is inapplicable. Far from appearing unlikely that the administrative process could yield meaningful relief, it appears instead that the OHA has come to be in agreement with at least some of the arguments that Johnson offers in support of her first two enumerated claims, and there is no evidence suggesting that the misleading medical records and/or adverse coverage determination that are the subject of her third claim could not be corrected through an administrative appeal.

The foregoing findings raise the question whether this court may at this time properly exercise subject-matter jurisdiction over Johnson's claims to the extent alleged against defendants DHHS and/or FCI. This court may consider even prudential ripeness concerns *sua sponte*, and need not wait until the issue is raised by a party's motion. *See Reno*, 509 U.S. at 58, *quoting*

Page 12 - FINDINGS AND RECOMMENDATION

*Regional Rail Act Reorganization Cases*, 419 U.S. 102, 138 (1974); *see also* 28 U.S.C. § 1915(e). Analysis of Johnson's allegations in support of her claims establishes that, to the extent Johnson states claims against defendants DHHS and/or FCI, those claims would be rendered moot in the event of a result favorable to Johnson in connection with appropriate administrative appeal of OHA's complained-of conduct as discussed above. Indeed, to the extent Johnson's pleading may be construed as stating claims against DHHS or FCI, those claims appear entirely derivative of her claims against OHA. In consequence, I find that the foregoing analysis of the ripeness of Johnson's claims to the extent alleged against OHA applies with equal force to Johnson's claims to the extent alleged against DHHS and/or FCI.

## CONCLUSION

For the reasons set forth above, OHA's motion (#15) should be granted on subject-matter jurisdictional grounds only, Johnson's claims to the extent alleged against defendant OHA should be dismissed without prejudice for lack of subject-matter jurisdiction in part as discussed above on sovereign immunity grounds and in their entirety on ripeness grounds, and Johnson's claims to the extent alleged against defendants DHHS and FCI should be dismissed without prejudice *sua sponte* for lack of subject-matter jurisdiction on ripeness grounds. Such disposition will not preclude Johnson from refiling her claims in federal court in the event the jurisdictional defects identified above are cured, and will not preclude Johnson from pursuing her claims in any court of the State of Oregon. A final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections

Page 13 - FINDINGS AND RECOMMENDATION

are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 1st day of July, 2014.

*Paul Papak*
Honorable Paul Papak
United States Magistrate Judge